**BELLSOUTH ADVERTISING & PUBLISHING CORPORATION,**
Plaintiff,

v.

**The REAL COLOR PAGES, INC.,**
**Randy Franks and David J.**
**Roy, Defendants.**

**No. 91–660–Civ–J–16.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 16, 1991.

James M. McLean, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., Anthony B. Askew, Stephen M. Schaetzel, Jones, Askew & Lunsford, Atlanta, Ga., for plaintiff.

Robert C. Shearman, Henderson, Franklin, Starnes & Holt, William E. Noonan, Ft. Myers, Fla., for defendants.

## OPINION

JOHN H. MOORE, II, District Judge.

This Cause is before the Court on Plaintiff BELLSOUTH ADVERTISING AND PUBLISHING CORPORATION's Motion for Preliminary Injunction filed August 23, 1991. Defendants, THE REAL COLOR PAGES, INC., RANDY FRANKS, and DAVID J. ROY, filed a memorandum in opposition to the Plaintiff's motion in open court on September 9, 1991. On that same date, this Court held a hearing on the motion, which was attended by all parties to this action.

### I. Background

BellSouth Corporation ("BellSouth") was created as a result of the divestiture of the American Telephone and Telegraph Company ("AT & T"). BellSouth is the parent corporation of its wholly owned subsidiaries Southern Bell and BellSouth Enterprises, Inc. BellSouth Enterprises, Inc., in turn, is the parent corporation of its wholly owned subsidiary, BellSouth Advertising and Publishing Corporation ("BAPCO"), Plaintiff in the present action.

Prior to the divestiture of AT & T, Southern Bell published telephone directories for its subscribers. These directories typically included two sections, commonly called

"White Pages" and "Yellow Pages." The "White Pages" section included an alphabetical arrangement of residential subscribers' listings. The "Yellow Pages" section included a classified arrangement of business subscribers' listings and advertisements grouped under headings; hence the designation "classified directory." The advertisements ranged from a single line to a full page display.

Upon AT & T's divestiture, BellSouth created BAPCO for the purpose of creating, publishing and distributing telephone directories. Pursuant to a written agreement, Southern Bell granted BAPCO the exclusive right to publish the Southern Bell Yellow Pages classified directories. In performing this obligation, BAPCO employs a strict set of advertising standards that govern the placement of advertising in their classified directories. BAPCO's responsibilities also involve authoring a community interest section, known appropriately as the "Community Interest Pages," which appear at the beginning of the classified directory. A tab insert or divider page identifies this community interest section, and hence the classified directory itself. Additionally, this divider page is sold to an advertiser at a premium rate.

BAPCO has adopted and used federally registered and unregistered trademarks in association with classified directories published for Southern Bell. First, the "Bell Logo," which is comprised of a graphic representation of a bell, was granted a certificate of registration on December 5, 1989, and is currently registered under federal registration number 1,569,327. Second, the word mark "Southern Bell," first used at the inception of the company in the late 1800's, was granted a certificate of registration on October 6, 1987, and is currently registered under federal registration number 1,459,998. Third, the word mark "The Real Yellow Pages," which was first used on a classified directory in Florida in 1984, is currently pending before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office. The final two marks, the "Walking Fingers" logo and the slogan "Let Your Fingers Do The Walking," are unregis-

tered, and have been used concurrently and consistently since their adoption in 1962. All of the marks described above have been used on or in connection with BAPCO's St. Augustine classified directory.

Defendant The Real Color Pages, Inc. ("Color Pages"), formerly known as the Seaview Tourist Guide, Inc., is a Florida corporation with its principal place of business in Naples, Florida. Defendant Randy Franks ("Franks") is the president, director and registered agent of Defendant Color Pages. Defendant David J. Roy ("Roy") is a distributor of the Color Pages in the St. Augustine area. Defendants create, compile and publish a color, graphic tourist guide which contains advertising items of particular tourist interest. These items include restaurants, theaters, historical attractions and boat rentals.

Defendants have been publishing tourist guides since 1987. Formerly known as "The Seaview Tourist Guide," in May of 1991, Defendants adopted the corporate name, "The Real Color Pages, Inc.," and began calling their guides "The Real Color Pages." Defendants have adopted the slogan "We let the pages do the talking" on their promotional material. The guides are distributed pursuant to contracts entered into with hotels, resorts and other tourist attractions and are affixed with an adhesive strip to the inside of the prospective businesses' telephone book. Defendants contract with scouting organizations and church groups to insert the guides into BAPCO's directories. In the case of the St. Augustine directory, published by BAPCO, the Defendants' directory is inserted where the "Community Interest Pages" tab insert is. According to Defendants, these guides have been attached to BAPCO's directories since 1987, and BAPCO has been aware of this practice for "most, if not all, of this period."

The evidence submitted shows that in the summer of 1990, BAPCO first learned of the Seaview Tourist Guide by receiving two complaints from advertisers in the Florida Keys claiming that Defendant Franks had misrepresented himself and his business as being associated with Southern Bell and/or

BAPCO. On May 29, 1990, BAPCO's representative, Joseph J. Gallo, wrote Defendant Franks stating:

> [W]e have learned that you have attempted to pass yourself off as a sales representative for The *Real* Yellow Pages from Southern Bell, in order to sell advertising which will appear in the Seaview Tourist Guide.... Such activities amount to unfair and deceptive trade practices under federal and state law and infringe the trademarks and tradenames of BAPCO and Southern Bell.

Defendant Franks responded to Mr. Gallo's letter and sent copies of Defendants' contracts with potential advertisers. On July 9, 1990, Mr. Gallo again wrote Defendant Franks advising him that Defendants' contract form did, in fact, notify customers that Defendants' guide was not affiliated with Plaintiff. Mr. Gallo further stated:

> We trust that no additional reports shall be forthcoming ... to the effect that you or any other representatives of the Sea View (sic) Tourist Guide, Inc. are engaged in activities in which you attempt to pass yourselves off as representatives of The *Real* Yellow Pages from Southern Bell or any other activity which amounts to an unfair and deceptive trade practice.

It is unclear when Plaintiff actually became aware of Defendants' guide being inserted into BAPCO's directories. The Court finds that the affidavit of Mr. Alberto Gongora, a BAPCO representative, is determinative of this issue. According to Mr. Gongora's affidavit, he first saw the Seaview Tourist Guide in the Key West Holiday Inn in January of 1991.

In May of 1991, Defendants adopted the corporate name "The Real Color Pages, Inc.," and filed the proper documentation with the Secretary of State of the State of Florida. Apparently, Defendants simultaneously adopted the slogan "We let the pages do the talking."

On August 13, 1991, Plaintiff's counsel, Mr. Stephen Schaetzel wrote Defendant Franks, via Federal Express, expressing objections to Defendants' use of its slogans, as well as the practice of inserting the tourist guide in BAPCO's directories.

Mr. Schaetzel demanded cessation of Defendants' name and slogans, and the practice of inserting directories. Finally, on August 22, 1991, Mr. Schaetzel corresponded with Defendants' counsel, Mr. William Noonan, via facsimile, apparently responding to a facsimile from Mr. Noonan, which this Court has not reviewed. The content of Mr. Schaetzel's letter is basically an argument on the merits of the action presently before this Court. Mr. Schaetzel's letter ended, "It appears, regretfully, that BAPCO has no choice other than to file suit in this matter. Please let us know today if you are willing to accept service on behalf of the Real Color Pages, Inc. and Mr. Franks." The following day, Mr. Noonan filed a declaratory judgment action in the Ft. Myers Division of the Middle District of Florida against BAPCO. The suit was filed at 2:36 p.m. on August 23, 1991.

BAPCO initiated the present action by filing a Verified Complaint and a Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery on August 23, 1991 at 4:23 p.m. The Plaintiff's complaint contains eight counts, only two of which are the basis for this motion: unfair competition and trademark infringement. After due consideration of the Plaintiff's claims, along with the appropriate standards for the granting of the extraordinary relief requested, this Court, on August 30, 1991, issued a Temporary Restraining Order, restraining Defendants from:

> a. From inserting or causing any insertion-directories to be inserted or affixed into any directory published by Plaintiff, BellSouth Advertising & Publishing Corporation, including into BellSouth Advertising & Publishing Corporation's 1991–92 St. Augustine Directory;
>
> b. From using the expressions "The Real Color Pages" and "We let the pages do the talking";
>
> c. From infringing any of the trademarks previously adopted or used by Southern Bell or BAPCO, including without limitation the trademarks, the "Bell Logo," "Southern Bell" and "The Real Yellow Pages"; and

d. From employing any words, symbols or conduct that indicates that the Defendants' insertion-directories, promotional materials and/or business services are authorized, sponsored, endorsed or approved by or otherwise connected with BAPCO, BellSouth Corporation, Southern Bell or any other related BellSouth Corporation Company.

In accordance with Federal Rule of Civil Procedure 65, the Court required Plaintiff to post a $2,500.00 bond, and further limited the existence of the Temporary Restraining Order to 6:30 p.m., September 9, 1991. On September 3, 1991, Plaintiff duly posted a cash bond, complying with this Court's order.

On September 9, 1991, at 5:30 p.m., this Court held a hearing on Plaintiff's Motion for a Preliminary Injunction. The hearing was limited to the argument of counsel pursuant to Local Rule 4.06(b)[1] of the Middle District of Florida. In lieu of evidence and testimony being presented at the hearing, this Court allowed the parties to submit affidavits, exhibits and supplemental authority by 5:00 p.m., September 12, 1991, for the Court to consider in making the determination whether to grant Plaintiff's motion. The Court also extended the expiration of the Temporary Restraining Order until 6:00 p.m., September 16, 1991.

## II. Discussion

### A. The Analysis Under Rule 65

■ The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of America v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). To prevail on a motion for a preliminary injunction, a plaintiff has the burden of proving four essential elements: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat of irreparable injury if an injunction does not issue; (3) the threatened injury to plaintiff outweighs any harm that might result to the defendants; and (4) that the injunction, if issued, would not be adverse to the public interest. *E. Remy Martin & Co. v. Shaw-Ross Intern. Imports*, 756 F.2d 1525, 1530, n. 13 (11th Cir.1985); *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983).

### 1. Substantial Likelihood of Success on the Merits

■ BAPCO asserts two grounds in support of its Motion for Preliminary Injunction. These grounds allege that Defendants, by inserting their directories into BAPCO's directories and/or by using the slogans "The Real Color Pages," and "We let the pages do the talking," have committed acts amounting to: first, unfair competition, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[2]; and second, trademark infringement, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)[3]. The primary issue which must

---

**1.** Rule 4.06(b) provides, in pertinent part:

All hearings scheduled on applications for a preliminary injunction will be limited in the usual course to argument of counsel unless the Court grants express leave to the contrary in advance of the hearing pursuant to Rule 43(e), Fed.R.Civ.P.

**2.** 15 U.S.C. § 1125(a) provides:

(a) **Civil action.** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**3.** 15 U.S.C. § 1114(1) provides, in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a reg-

be proved in order to show a substantial likelihood of success under either section is whether there is a likelihood of confusion, mistake or deception created by Defendants' insertion-directory and/or slogans. *AmBrit, Inc. v. Kraft Inc.*, 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir.1983); *Chassis Master Corp. v. Borrego*, 610 F.Supp. 473, 475 (S.D.Fla.1985). The Eleventh Circuit has consistently referred to the following seven factors when determining whether a likelihood of confusion exists: (1) the type of mark; (2) the similarity of the mark; (3) the similarity of services; (4) the identity of purchasers and the similarity of retail outlets; (5) the similarity of advertising campaigns; (6) the intent of the defendants; and (7) actual confusion. *Freedom Savings & Loan Ass'n v. Way*, 757 F.2d 1176 (11th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985).

■ Initially, a basic query must be settled as to whose confusion the Court is looking out for. "Customers" is inadequate because if taken literally, the inquiry is limited to whether advertisers are confused. This approach is too narrow, and the Court must also include the hotels, motels and resorts that Defendant has contracted with. Most importantly, the analysis must encompass tourists and vacationers; those at whom the Defendants' insertion-directory is specifically aimed.

*A. The type of mark*

■ The first factor raises the issue whether the marks adopted and used by BAPCO are "strong," and therefore deserving of protection, or "weak," and not entitled to protection. *University of Georgia Athletic Ass'n. v. Laite*, 756 F.2d 1535

(11th Cir.1985). The strength of a trademark is measured in the marketplace by its tendency to identify the source of the goods. There are essentially four types of marks, ranging in degree of identification, and hence protection. They are, from strongest to weakest: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic. *See e.g., Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183–1184 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

■ Defendants assert that the only relevant mark at issue in this case is "The Real Yellow Pages." This Court however believes that, at the very least, BAPCO's slogan, "Let Your Fingers Do The Walking" must also be relevant in this context. The Court concludes, based on the circumstances of this case, that BAPCO's marks are suggestive. Although the pages in BAPCO's directory are in fact yellow, the slogan "The Real Yellow Pages" in no way connotes classified advertising. Moreover, the slogan "Let Your Fingers Do The Walking" appears to be suggestive, if not arbitrary; it forces the consumer to use her imagination in identifying the source of the classified directory.

*B. The similarity of the mark*

■ At the onset, it must be pointed out that "[w]here the products are closely related, less similarity in the trademarks is necessary to support a finding of infringement." *Squirtco v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). The similarity of the products is discussed below. "In evaluating the similarity of marks, [the Court] must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *E. Remy Mar-*

istered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrap-

pers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

*tin & Co. v. Shaw–Ross Intern. Imports,* 756 F.2d at 1531. "Similarity of design is 'determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks.'" *Rolex Watch U.S.A., Inc. v. Canner,* 645 F.Supp. 484, 489 (S.D.Fla.1986) (quoting, *Exxon Corp. v. Texas Motor Exch.,* 628 F.2d 500, 504–5 (5th Cir.1980). In this case, the similarity between the sound of Plaintiff's and Defendants' slogans is significant. However, the Court is not willing to enjoin the Defendants from using the slogans "The Real Color Pages" and "We let the pages do the talking" by themselves at the present time.

■ Additionally, Plaintiff claims that Defendants have "wrapped themselves" in BAPCO's directory, thereby infringing on its trademarks. In *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984), the Eleventh Circuit stated:

> [I]t is well established that "falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or *sponsorship* constitutes infringement." *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975) (emphasis supplied). *See also, Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 770 (5th Cir.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980). Thus, a trademark infringement case need not just involve imitation of the registrant's mark. The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement.

*Burger King Corp. v. Mason,* 710 F.2d at 1492. Applying these principles, the Court concludes that, when inserted in BAPCO's directories, Defendants' marks are substantially similar to those belonging to Plaintiff as to create a likelihood of confusion.

*C. The similarity of services*

■ "The greater the similarity between the products and services, the great-er the likelihood of confusion." *Exxon Motor Corp. v. Texas Motor Exch.,* 628 F.2d at 505. The question then, is not whether the public can readily distinguish Plaintiff's product from Defendants' product, but "whether the products are the kind the public attributes to a single source. *E. Remy Martin & Co. v. Shaw–Ross Intern. Imports,* 756 F.2d at 1530. The rights of the owner of a registered trademark extend to any goods related in the minds of the consumers in the sense that a single producer is likely to put out both goods. *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619, 623 (5th Cir.1963).

■ Although Defendants contend that their service is a "very specialized ... directory that is intended exclusively for rooms in hotels, motels and resorts" there is no doubt in the Court's mind that the services provided by BAPCO and the Color Pages are identical. Both create, compile and publish classified directories. It is apparent to the Court that a tourist could easily conclude that the Color Pages, when inserted in BAPCO's directory, was a product of BAPCO. In sum, the Court finds that there is a high degree of similarity between the services.

*D. The identity of purchasers and the similarity of retail outlets*

■ Similarities between the retail outlets for and the predominant consumers of Plaintiff's and Defendants' products increase the possibility of confusion, mistake or deception. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d at 1541; *Contra Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Defendants again contend that their market for customers is "much more limited," and is only directed towards "a very narrow class of advertisers." Again, this Court does not find Defendants' argument persuasive. The fact is that Plaintiff's existing advertisers are being solicited by a competitive directory, which then utilizes Plaintiff's medium to circulate its advertisements.

### E. The similarity of advertising campaigns

The fifth factor used in evaluating whether there is a likelihood of confusion is the similarity of the parties' advertising campaigns. "The greater the similarity in the campaigns, the greater the likelihood of confusion." *Exxon Corp. v. Texas Motor Exch.*, 628 F.2d at 506. Again, Defendants argue that their advertising campaigns are only directed at select businesses. While this may be true, the Court does not find this argument persuasive. Both parties solicit customers by means of sales literature, either through the mail, by telephone or in person. Additionally, both parties utilize sales representatives to contact customers in distinct sales regions. In light of these factors, the Court finds that the advertising campaigns used are identical.

### F. The intent of the defendants

A finding that Defendants infringed upon Plaintiff's trademarks with the intent of deriving benefit from Plaintiff's reputation may alone be enough to justify the inference that there is confusing similarity. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d at 1542; Restatement of Torts § 729, Comment (f) (1938). In the present case, it is likely that a jury could infer that Defendants purposely inserted its guides into BAPCO's directories in order to benefit from the reputation BAPCO's mark had already achieved. *See generally John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d at 977.

### G. Actual confusion

"Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d at 263. Defendants contend that "BAPCO has exhibited an utter lack of evidence of actual confusion in this case." In fact, BAPCO has submitted several affidavits which clearly illustrate actual confusion. Specifically, the affidavits of Paul L. Martz, A.H. Tebault, Marsha Griffin, Antoinette Leonard, Terri Johansson, John David and Susan P. McCranie clearly establish confusion. Additionally, these affidavits support a finding that a likelihood of confusion exists for a tourist, as well as for an advertiser or the manager of a hotel, motel or resort.

Defendants maintain that the present case is identical to *Paramount Pictures Corp. v. Video Broadcasting Systems, Inc.*, 724 F.Supp. 808 (D.Kan.1989), and therefore, injunctive relief must be denied. In that case, Paramount had placed commercials at the beginning of their videocassettes containing motion pictures. Paramount brought an action, alleging copyright and trademark infringement, against another company which had placed local advertisements, overlapping Paramount's commercials, on cassettes offered for rent by video retailer stores. The court did not find a likelihood of confusion, and Paramount's motion of preliminary injunction was denied. A pivotal determination in the holding in *Paramount* was that a consumer would not identify Paramount with the making of local commercials. Essentially, this issue required a conclusion regarding the similarity of the products. This distinction is critical in the present case. Whereas Paramount had dissimilar products than the local businesses which advertised on the videocassettes, as shown above, the products in the present case are substantially similar, if not identical. Thus, the Court finds that *Paramount* is inapposite to the present case.

Defendants assert the defenses of acquiescence and abandonment, which would preclude Plaintiff from obtaining injunctive relief as well as success on the merits. Acquiescence alone is analogous to an implied license to use a name. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir.1984); *Cf. Menendez v. Holt*, 128 U.S. 514, 524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888) ("where consent by the owner to use of his trademark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license.' ") (cita-

tions omitted). Thus, an implied license is generally terminable at the will of the licensor. *See also Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d at 670 (once licensor's right to use the mark is terminated, any subsequent use constitutes infringement).

■ Turning to the present case, the Court finds that BAPCO did not acquiesce in the Defendants' publication. Moreover, the Court disagrees with Defendants' contention that BAPCO had knowledge since 1987 of the Defendants' product being inserted into BAPCO's directory. The only evidence of BAPCO's actual knowledge of Defendants' guides being inserted into Plaintiff's directories is contained in the affidavit of Alberto Gongora, which fixes a date sometime in January, 1991.

■ The defense of abandonment is one for which the Eleventh Circuit requires strict proof. *Conagra, Inc. v. Singleton*, 743 F.2d at 1516. In *Citibank, N A. v. Citibanc Group, Inc.*, 724 F.2d 1540 (11th Cir.1984), the court stated the burden as follows, "In order to prove abandonment, defendants must show that plaintiff actually abandoned the use of the mark, and, also that plaintiff intended to abandon the mark." *Id.* at 1545. In the present case, Defendants have failed to prove either element. Thus, Defendants' abandonment defense fails.

In conclusion, the Court finds that there is a likelihood of confusion, mistake or deception created by Defendants' insertion-directories. Therefore, the Court concludes that Plaintiff is likely to succeed on the merits of its causes of action alleging unfair competition and trademark infringement.

## 2. Irreparable Injury

■ Proof of irreparable harm is the second requirement for the issuance of a preliminary injunction. *Lawrence v. St. Louis–S.F. Ry.*, 274 U.S. 588, 592, 47 S.Ct. 720, 722, 71 L.Ed. 1219 (1927). The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of

Civil Procedure 65. *Sundor Brands, Inc. v. Borden, Inc.*, 653 F.Supp. 86, 93 (M.D.Fla.1986); *Church of Scientology Intern. v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir.1986); *E. Remy Martin & Co. v. Shaw–Ross Intern. Imports, Inc.*, 756 F.2d at 1530 & n. 14. Because this Court has found that Plaintiff is likely to prevail on the merits of its trademark infringement and unfair competition by establishing a likelihood of confusion, the Court now also finds that Plaintiff has established that the injury threatening it is of an irreparable nature.

■ Defendants contend that this case lacks irreparable injury because Plaintiff has delayed to such an extent as to constitute laches. *See e.g.*, J. Gilson, *Trademark Protection and Practice* § 8.07[1] (1984) ("Undue delay in seeking [a preliminary injunction] once plaintiff has, or should have, knowledge of the infringement will probably result in its denial."). Defendants cite *Ameritech, Inc. v. American Inf. Technologies Corp.*, 609 F.Supp. 611 (N.D.Ohio 1985), for the proposition that a six-month delay by plaintiff of filing suit is unreasonable. The Court quotes from the opinion of the Court of Appeals for the Sixth Circuit, reversing Defendants' support:

> The district court held that the defense of laches applied because plaintiff's six month delay between defendant's announcement of its adoption of "Ameritech" and plaintiff's filing of its trademark action, was unreasonable in light of defendant's large advertising expenses. We disagree. Plaintiff is entitled to "some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366, *reh'g denied*, 777 F.2d 1130 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986).

*Ameritech, Inc. v. American Inf. Technologies Corp.*, 811 F.2d 960, 963 (6th Cir. 1987).

The evidence before this Court establishes that Plaintiff first learned of Defendants' insertion directory in January 1991. The Court finds that Plaintiff's delay of seven to eight months is not an unreasonable amount of delay, and does not necessitate the preclusion of a finding of irreparable injury.

### 3. Balancing of Hardships

This leaves the third factor, balancing whether the threatened harm to BAPCO outweighs the threatened harm which the injunction may do to the Defendants, to be considered. BAPCO has shown, as the Court has found, that the likelihood of confusion between its directory and Defendants' insertion-directory threatens harm to BAPCO's goodwill and reputation. The only evidence on the record indicating the harm an injunction would bring to Defendants is the self-serving statement that such an injunction would put them out of business. However, BAPCO has stated that its only desire is to prevent Defendants from inserting their directories, and to discontinue using the slogans "The Real Color Pages" and "We let the pages do the talking." As the Court has stated earlier, the slogans used by Defendants, standing alone, do not clearly establish a likelihood of confusion. Thus, Defendants could continue their operation by modifying the medium by which they advertise. It appears clear to the Court then, that BAPCO has carried its persuasion on this factor.

### 4. The Public Interest

In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount. *Sundor Brands, Inc. v. Borden, Inc.,* 653 F.Supp. at 93. When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation. *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir.1976). In the present case, the public interest would be served by the issuance of an injunction which would immediately prevent further confusion of customers from occurring. Indeed, the issuance of an injunction might be in the Defendants' best interests also. *See George Washington Mint, Inc. v. Washington Mint, Inc.,* 349 F.Supp. 255, 263 (S.D.N.Y.1972) ("a preliminary injunctive decree ... is sometimes an act of kindness to the party enjoined. It cuts him off from a business life, which, from all the portents, would involve a series of trademark frustrations.").

In conclusion, Plaintiff has proved the elements necessary for the issuance of a preliminary injunction. Plaintiff has established that Defendants' insertion-directory is likely to cause confusion such that Plaintiff will probably: (1) succeed on the merits of its claims for trademark infringement and unfair competition; (2) be caused irreparable injury if an injunction is not issued; (3) that the threatened harm to Plaintiff outweighs that to Defendants; and (4) that an injunction would not disserve the public interest.

### B. Defendants' Related Lawsuit

The final consideration which this Court must make is what effect, if any, should be given to Defendants' Fort Myers action, Case No. 91–220–Civ–FM–15D, filed less than two hours prior to BAPCO's filing of the present action. Defendants contend that the "first Court and time rule" applies, and that this Court should deny Plaintiff's request for injunctive relief leaving the litigation to be resolved in the Fort Myers Division, before the Honorable William J. Castagna. Defendants further state that while the rule above is not mechanical, that the other relevant considerations of convenience to the parties and the Court also favor adjudication in Ft. Myers. *Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620 (D.C.Cir.1975).

The holding in *Hop–In Food Stores, Inc. v. S & D Coffee, Inc.,* 642 F.Supp. 1106 (W.D.Va.1986), appears to be dispositive of this issue. In that case, the court stated:

> The general rule in federal courts is that the court in which jurisdiction first attaches should be the one to decide the

case. *See Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir.1985). However, when a declaratory judgment suit is filed simply in anticipation of another parallel suit, courts have often dismissed the first suit as an improper effort to "forum-shop."

*Id.* at 1107. *See also Ven–Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982) (equitable consideration in determining whether to entertain a declaratory judgment action is whether the declaratory judgment action was filed in apparent anticipation of the other pending proceeding).

Applying these principles to the facts of this case, the Court concludes that Defendants' Ft. Myers action was filed in anticipation of this action, and therefore declines to deny injunctive relief or dismiss this action because of the pendency of the Ft. Myers action.

### III.   Conclusion

Based on the foregoing, it is hereby ORDERED:

1. That Plaintiff's Motion for Preliminary Injunction is GRANTED. Defendants are hereby enjoined from:

a. inserting or causing any insertion-directories to be inserted or affixed into any directory published by Plaintiff, Bell-South Advertising and Publishing Corporation;

b. infringing any of the trademarks previously adopted or used by Southern Bell or BAPCO, including without limitation the trademarks, the "Bell Logo," "Southern Bell" and "The Real Yellow Pages"; and

c. employing any words, symbols or conduct that indicates that Defendants' directories, promotional materials and/or business services are authorized, sponsored, endorsed or approved by or otherwise connected with BAPCO, BellSouth Corporation, Southern Bell or any other related BellSouth Corporation Company.

·2. The Court has increased the amount of the bond to $30,000.00. Because Plaintiff has already posted a cash bond in the amount of $2,500.00, Plaintiff is now required to post a bond in the amount of $27,500.00.

DONE AND ORDERED.