**TRACFONE WIRELESS, INC., Plaintiff,**

v.

**Alicia D. WASHINGTON, The Real Imagination, LLC, Mateo Jara, et al., Defendants.**

**Case No. 6:13–cv–1030–Orl–36TBS.**

United States District Court, M.D. Florida, Orlando Division.

Oct. 11, 2013.

---

Aaron S. Weiss, Steven J. Brodie, Carlton Fields, PA, Miami, FL, James Blaker Baldinger, Carlton Fields, PA, West Palm Beach, FL, for Plaintiff.

Mateo Jara, Bozeman, MT, pro se.

Carla Reece, Archer Bay, P.A., Orlando, FL, for Defendant.

## *ORDER*

CHARLENE EDWARDS HONEYWELL, District Judge.

This cause comes before the Court on Plaintiff TracFone Wireless, Inc.'s ("TracFone") Motion for Preliminary Injunction, filed on July 10, 2013 ("Motion for Preliminary Injunction") (Doc. 9). As explained herein, after being served with the Motion for Preliminary Injunction, several Defendants stipulated to entry of a

preliminary injunction against them. *See* Docs. 33, 35. The other Defendants served in this action, Rosa Lopez ("Lopez") and Rolo Multiservices, Inc. ("RMI"), have not entered an appearance. As such, they have not responded to the Motion for Preliminary Injunction, and the time to do so has expired. On August 28, 2013, the Court held a hearing on the Motion for Preliminary Injunction, and heard argument of counsel for TracFone. *See* Doc. 40. For the reasons that follow, TracFone's Motion for Preliminary Injunction will be granted.

## I. BACKGROUND

TracFone is the largest provider of prepaid wireless telephone service in the United States. Doc. 9–1, Declaration of Kevin Wehling ("Wehling Dec."), ¶ 22. TracFone markets and sells its telecommunications products and services under the TracFone, TelCel, Telcel America, NET10, SafeLink Wireless, Straight Talk, and spiracle logo brands, all of which are registered trademarks owned by, or licensed to, TracFone (the "TracFone Trademarks"). *Id.* at ¶¶ 22, 27–29; *see* Doc. 1–1. TracFone's service enables its customers to prepay for their wireless service by purchasing TracFone prepaid airtime and specially-manufactured wireless phones. Wehling Dec., ¶ 22. Customers load airtime minutes into their TracFone prepaid phones using codes and proprietary online tools generated from PIN numbers associated with TracFone prepaid airtime or through a TracFone customer service representative. *Id.* Only TracFone and its authorized, affiliated sales agents are permitted to sell TracFone cellular phones, prepaid airtime cards, and TracFone prepaid airtime minutes, and to use TracFone's marks. *Id.* at ¶ 33.

Recently, TracFone became aware that Defendants Lopez and RMI—who are not authorized retailers or distributors of TracFone products or services—have engaged in a collaborative effort in which they have represented themselves as TracFone employees and have been advertising, and purporting to sell, certain premium brands of cellular phones (such as an Apple iPhone or Samsung Galaxy) with unlimited minutes to Mexico under one of the TracFone brand names, such as TelCel or TelCel America. *Id.* at ¶¶ 5, 10, 34. Once customers purchase what they believe to be a premium TracFone cellular phone and Defendants receive payment, Defendants then deliver substantially less expensive TracFone phones to these customers. *Id.* at ¶¶ 4, 10.

TracFone has received calls and complaints from angry and confused customers who have been duped by the phone switch scheme. *Id.* at ¶¶ 5, 15. These customers are upset that they have received less expensive phones than what they thought they were purchasing, and believe that TracFone is responsible for tricking them. *Id.* Several of the defrauded customers have identified the seller of these phones as Defendant The Real Imagination, LLC ("TRI"), which has a location of 47 Sawfish Court, Kissimmee, Florida, and whose members include Defendant Rolando R. Quisca Astocahuana ("Quisca"), Defendant Carolina Davila Santillana ("Santillana"), and Defendant Alicia D. Washington ("Washington"). *Id.* at ¶¶ 5–6. Other defrauded customers have identified Defendant Ricardo Valenzuela ("Valenzuela") or RMI, which is operated by Lopez, as sellers of the phones. *Id.* at ¶¶ 5, 7. As part of its investigation into the bait-and-switch scheme, TracFone hired a private investigator who discovered: multiple receipts for TracFone phones and products along with delivery packages and labels related to the 47 Sawfish Court address, TRI, or

Quisca; bank receipts in the names of TRI and Washington; and a gift card registered to Defendant Mateo Jara ("Jara"), which was used to purchase various TracFone products that were ultimately mailed on behalf of TRI. Doc. 9–2, Declaration of Cindy Talatham ("Talatham Dec."), ¶¶ 4–12.

On July 8, 2013, TracFone filed a Complaint in this Court asserting the following claims against all Defendants: (1) Count One—trademark infringement in violation of 15 U.S.C. § 1114; (2) Count Two—unfair competition and false advertising in violation of 15 U.S.C. § 1125; (3) Count Three—contributory trademark infringement; (4) Count Four—unfair competition and deceptive trade practices in violation of Fla. Stat. § 501.204; (5) Count Five—civil conspiracy in violation of Florida common law. Doc. 1. Subsequently, TracFone filed its Motion for Preliminary Injunction, seeking a court order prohibiting Defendants from selling, advertising, and distributing TracFone products and services, using the TracFone Trademarks, or participating in the bait-and-switch scheme. *See* Doc. 9. Thereafter, Defendants Washington, TRI, Quisca, and Santillana stipulated to entry of a preliminary injunction against them.[1] *See* Doc. 33. Defendant Jara then separately stipulated to entry of a preliminary injunction against him.[2] *See* Doc. 35. The only served Defendants who have not entered into a stipulation are RMI and Lopez,[3] who have not entered an appearance in this action and have had a clerk's default entered against them. *See* Doc. 39. As such, this Order only pertains to Defendants RMI and Lopez.

1. The Court entered a preliminary injunction against Washington, TRI, Quisca, and Santillana on October 9, 2013. Doc. 47.

2. The Court entered a preliminary injunction against Jara on October 9, 2013. Doc. 46.

3. Defendant Valenzuela has not been served with process in this case. Doc. 32, ¶ 3.

## II. STANDARD OF REVIEW

A district court may issue a preliminary injunction where the moving party demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir.2003). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Id.* (internal citations and quotations omitted).

## III. DISCUSSION

### A. TracFone Has a Substantial Likelihood of Success on the Merits

TracFone asserts that it has a substantial likelihood of success on the merits with respect to its claims under three separate subsections of the Lanham Act, 15 U.S.C. § 1051 *et seq.* Doc. 9, pp. 6–12. The Court addresses each claim below.

#### 1. Trademark Infringement under Section 32(1) of the Lanham Act

Section 32(1) of the Lanham Act protects trademark owners against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale,

offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim under Section 32(1), a plaintiff must show that: (1) its mark is valid; and (2) the defendant's use of the contested mark is likely to cause confusion. *Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989). A certificate of registration provided by the U.S. Patent and Trademark Office ("PTO") is prima facie evidence of the validity of the registered mark. 15 U.S.C. § 1057(b). Here, TracFone has presented copies of Certificates of Registration issued by the PTO with respect to the TracFone, TelCel, NET 10, and spiracle logo trademarks. *See* Doc. 1–1. TracFone has also offered the sworn declarations of Kevin Wehling, a Fraud Investigations Manager for TracFone, who avers that TracFone has obtained Certificates of Registration from the PTO with respect to each TracFone Trademark.[4] *See* Wehling Dec., ¶¶ 28–29. By virtue of their failure to appear, Lopez and RMI have not provided any evidence to the contrary. As such, the Court is satisfied that TracFone's marks are valid.

■ The only remaining issue on TracFone's trademark infringement claim is whether Defendants' use of the TracFone Trademarks is likely to cause confusion. In assessing whether a likelihood of consumer confusion exists, courts consider the following seven factors: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5)

similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Frehling Enter., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999). The type of mark and actual confusion are the most important factors. *Id.* The Court considers each factor below.

### a. Type of Mark

■ There are four categories of marks, listed in order from weak to strong: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. *Id.* The stronger the mark, the greater the scope of protection accorded to it; the weaker the mark, the less trademark protection it receives. *Id.* The categories are based on the relationship between the name and the service or good it describes:

> Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services).

*Id.* at 1335–36 (internal citations and quotations omitted). The Eleventh Circuit has also held that the degree to which third parties make use of the mark is

---

4. While TracFone purported to attach copies of the Certificates of Registration as an exhibit to Wehling's sworn declarations, no such copies were attached. *See* Doc. 9–1. None-

theless, the Court finds the sworn declarations to be sufficient evidence of the validity of the TracFone Trademarks for purposes of this Order.

important in gauging the strength of a mark. *Id.* at 1336. "The less that third parties use the mark, the stronger it is, and the more protection it deserves." *Id.* Finally, "if a mark is 'incontestable,' that is, if it has been registered for five years with the [PTO], its holder has filed the affidavit required by 15 U.S.C. § 1065(3) with the [PTO], and the [PTO] has accordingly declared the mark 'incontestable,' then the mark's incontestability serves to enhance its strength." *Id.*

TracFone argues that its trademarks are arbitrary as applied to prepaid phone services and, therefore, entitled to substantial protection. Doc. 9, p. 8. While the Court need not decide conclusively which category the TracFone Trademarks (i.e., TracFone, TelCel, Telcel America, NET10, SafeLink Wireless, Straight Talk, and the spiracle logo) fall within for purposes of this Order, they appear to be, at a minimum, suggestive marks because they require some imagination (if very little) by the consumer to be understood as pertaining to cellular phone service. *See Frehling*, 192 F.3d at 1335. TracFone has also introduced evidence, in the form of Wehling's sworn declarations, that only TracFone and its affiliates are permitted to use the TracFone Trademarks, thereby resulting in a stronger mark. *See* Wehling Dec., ¶ 33; *Frehling*, 192 F.3d at 1336. Finally, TracFone has introduced evidence that the TracFone and spiracle logo trademarks, in particular, have been deemed incontestable, resulting in further enhancement of the strength of those marks.[5] *See* Wehling Dec., ¶ 28(a) & (*l*); *Frehling*, 192 F.3d at 1336. In sum, the Court finds that the TracFone Trademarks are strong

marks and, accordingly, the first factor—the type of mark—weighs heavily in favor of TracFone.

### b. Similarity of Mark

In assessing the similarity of the marks, the Court "compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337. Here, TracFone avers that Defendants have been replicating TracFone's marks. Wehling Dec., ¶¶ 11, 15, 35. Accordingly, there is a substantial likelihood of consumer confusion. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248–49 (11th Cir.2002) (finding that the defendants' concurrent use of a mark posed a substantial likelihood of confusion among consumers). As such, the second factor weighs heavily in favor of TracFone.

### c. Similarity of the Products the Marks Represent

The third factor requires a determination "as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling*, 192 F.3d at 1338. Here, TracFone has proffered evidence that Defendants are offering products and services which they purport to be TracFone products and services. Wehling Dec., ¶¶ 4–5, 10–11, 19. Therefore, a consumer would reasonably conclude that a single source—TracFone—is marketing those products and services. As such, there is a high degree of similarity between the products and services, and

---

5. While TracFone purported to attach copies of the Declarations of Incontestability as an exhibit to Wehling's sworn declarations, no such copies were attached. *See* Doc. 9–1. Nonetheless, the Court finds the sworn declarations to be sufficient evidence of the incontestability of the TracFone and spiracle logo trademarks for purposes of this Order. Even if these marks were not incontestable, the Court would still find that the first factor weighs heavily in favor of TracFone.

the third factor weighs heavily in favor of TracFone.

### d. Similarity of the Parties' Retail Outlets (Trade Channels) and Customers

The fourth factor takes into consideration "where, how, and to whom the parties' products are sold. Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion, though evidence that the products are sold in the same stores is certainly strong. The parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Frehling,* 192 F.3d at 1339 (internal citations and quotations omitted). Here, TracFone argues that Defendants' infringing products and services are sold through the same trade channels and to the same customers as TracFone's products and services, *see* Doc. 9, p. 9, but aside from generalized allegations, *see* Wehling Dec., ¶ 19, it offers minimal evidence on this point. As such, this factor does not weigh in favor of TracFone.

### e. Similarity of Advertising Media

By contrast, TracFone has offered some evidence that Defendants' method of advertising is similar to TracFone's. Wehling avers that Defendants, like TracFone, advertise their products and services on the Internet. *See* Wehling Dec., ¶¶ 9, 31. Since there appears to be some overlap in the parties' methods of advertising, the Court finds that this factor weighs slightly in favor of TracFone. *See Frehling,* 192 F.3d at 1339–40.

### f. Defendants' Intent

Turning to the fifth factor, the Court must consider whether Defendants adopted TracFone's marks with the intention of deriving a benefit from TracFone's business reputation. *See id.* at 1340. "[T]his fact alone may be enough to justify the inference that there is confusing similarity." *Id.* Indeed, "a likelihood of confusion can be found as a matter of law if the defendant intended to derive benefit from the plaintiff's trademark." *Babbit Elec., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1179 (11th Cir.1994). Here, TracFone has presented substantial evidence, in the form of a well-supported external investigation, that Defendants engaged in a comprehensive bait-and-switch scheme in which they posed as representatives of TracFone in purporting to sell TracFone products. Talatham Dec., ¶¶ 4–12; Wehling Dec., ¶¶ 4–11. This is clear evidence that Defendants used TracFone's marks with the intent of deriving a benefit from TracFone's business reputation. As such, the sixth factor weighs heavily in favor of TracFone.

### g. Actual Confusion

Evidence of actual confusion is the "best evidence of a likelihood of confusion." *Frehling,* 192 F.3d at 1340. Here, TracFone has pointed to clear evidence of actual confusion by consumers, as TracFone has received complaints from customers who have been defrauded into purchasing products and services which they believed to be TracFone products and services. Wehling Dec., ¶¶ 5, 13, 15. Therefore, the seventh factor weighs heavily in favor of TracFone.

### h. Conclusion

Evaluating the overall balance of the factors, five of the factors—including the two most important factors—weigh heavily in favor of TracFone, one factor weighs slightly in favor of TracFone, and one factor does not weigh in favor of TracFone. Thus, the Court concludes that TracFone has demonstrated that Defendants' use of the TracFone Trademarks is likely to cause consumer confusion. As a result, the Court finds that TracFone has a substantial likelihood of success on the merits

with respect to its trademark infringement claim.

### 2. Unfair Competition under Section 43(a) of the Lanham Act

█ "Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition in interstate commerce, and forbids unfair trade practices involving infringement of trademarks, even in the absence of federal trademark registration." [6] *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (internal punctuation and quotations omitted). To establish a prima facie case under § 43(a), TracFone must show: (1) that it had enforceable trademark rights in its marks; and (2) that Defendants made unauthorized use of the marks such that consumers were likely to confuse the two. *Id.* Thus, the Court's analysis of TracFone's trademark infringement claim applies equally to its unfair competition claim. *See id.* at 648–51; *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir.1994) ("The same set of facts enabling [the plaintiff] to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125."). Accordingly, the Court finds that TracFone has demonstrated a substantial likelihood of success on the merits with respect to its unfair competition claim.

### 3. False Advertising under Section 43(a)(1)(B) of the Lanham Act

█ Section 43(a)(1)(B) of the Lanham Act provides for a civil action against:

[a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B). To establish a likelihood of success on the merits of a false advertising claim under Section 43(a), the movant must establish: (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising. *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). If an advertisement is literally false, the movant need not present evidence of consumer deception. *Id.*

█ Because TracFone has not provided the Court with any copies of Defendants' advertisements, the Court cannot at this point determine whether the advertisements were literally false. Nevertheless, there is enough evidence for the Court to conclude that TracFone is likely

---

6. Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), provides:

Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

to prevail on the merits of its false advertising claim. TracFone has presented evidence that Defendants posed as TracFone representatives, and that they purported to sell high-end TracFone products while actually selling substantially less expensive products. Wehling Dec., ¶¶ 4–5, 10. It is clear that these advertisements were intended to deceive, and have actually deceived, a number of consumers. *See supra,* Part III.A.1.f & g. Defendants' misrepresentations were material, in that they caused consumers to purchase the products and services, and the products went through interstate commerce as they were received and shipped from and between several states and Mexico. Talatham Dec., ¶¶ 5, 8, 11. Finally, TracFone has demonstrated harm, as consumers have blamed TracFone after receiving lesser goods, thereby hurting TracFone's reputation. Wehling Dec., ¶ 14. TracFone also incurs costs with each consumer complaint. *Id.* at ¶ 15. Moreover, TracFone is unable to help these consumers and has lost control of its products, resulting in further erosion of its reputation and goodwill. *Id.* at ¶¶ 16–17. Accordingly, each of the five elements of a prima facie false advertising claim is met, and TracFone has established a likelihood of success on its claim.

## B. TracFone Will Suffer Irreparable Harm if the Injunction Is Not Issued

■ As to the second requirement for issuance of a preliminary injunction, "[t]he law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements" for issuing the injunction. *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.,* 792 F.Supp. 775, 784 (M.D.Fla.1991); *see E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530

(11th Cir.1985). Because the Court has found that TracFone is likely to prevail on the merits of its Lanham Act claims by establishing a substantial likelihood of confusion, the Court necessarily finds that TracFone has established that the threatened injury is of an irreparable nature. *See E. Remy Martin,* 756 F.2d at 1533–34; *BellSouth,* 792 F.Supp. at 784; *Sundor Brands, Inc. v. Borden, Inc.,* 653 F.Supp. 86, 93 (M.D.Fla.1986).

## C. The Balance of Hardships Weighs in Favor of a Preliminary Injunction

Turning to the third prong, the Court finds that Defendants have no legitimate interest in the continued use of the TracFone Trademarks. *See Laboratorios Roldan, C. por A. v. Tex Int'l, Inc.,* 902 F.Supp. 1555, 1571 (S.D.Fla.1995). Indeed, issuance of a preliminary injunction will merely enjoin Defendants from conducting a business which is already prohibited by federal law. *See MediaOne of Del., Inc. v. E & A Beepers & Cellulars,* 43 F.Supp.2d 1348, 1354 (S.D.Fla.1998). TracFone, on the other hand, continues to suffer harm in the form of lost goodwill, diminished reputation, and increased costs due to customer complaints. *See supra,* Part III.A.3. Accordingly, the threatened injury to TracFone clearly outweighs any damage an injunction may cause Defendants.

## D. A Preliminary Injunction Will Serve the Public Interest

"In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount. When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his

products' reputation." *BellSouth*, 792 F.Supp. at 785; *see Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir.2001). Here, the public interest would be served by the issuance of a preliminary injunction which prevents further consumer confusion.

In sum, TracFone has met each of the requirements necessary for issuance of a preliminary injunction, and, therefore, the Court will issue the injunction.

### E. TracFone Should Not Be Required to Post a Bond

Having determined that TracFone is entitled to a preliminary injunction in its favor, the Court must now decide whether to require TracFone to post a bond. Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." While a bond is therefore normally required, "it is well-established that the amount of security required by [Rule 65(c) ] is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir.2005) (internal quotations and punctuation omitted). Because the Court has determined that TracFone has a high probability of succeeding on the merits of its Lanham Act claims, and because Defendants have no legitimate interest in the continued use of the TracFone Trademarks, the Court will not require TracFone to post a bond. *See Harris v. Hous. Auth. of City of Daytona Beach*, No. 6:01–cv–254, 2001 WL 36404273, at \*5 (M.D.Fla. Apr. 25, 2001) (not requiring a bond where the preliminary injunction would result in minimal potential harm to the defendant); *Univ. Books & Videos, Inc. v. Metro. Dade County*, 33 F.Supp.2d 1364, 1374 (S.D.Fla.1999) (not requiring a bond where the movant had a high probability of succeeding on the merits of its claim).

Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff TracFone Wireless, Inc.'s ("TracFone") Motion for Preliminary Injunction (Doc. 9) is **GRANTED** as to Defendants Rosa Lopez and Rolo Multiservices, Inc. (the "Lopez Defendants").

2. The Lopez Defendants and each and all of their past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, companies, respective agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for any of the Lopez Defendants or on any of the Lopez Defendants' behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with a Lopez Defendant or any of the Lopez Defendants' representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with the Lopez Defendants who receive notice of this Order, shall be and hereby are immediately **ENJOINED** from:

    a. selling, advertising, soliciting, transferring, and/or shipping, directly or indirectly, any TracFone products and services, including, but not limited to, TracFone cellular phones or accessories; and,

b. using TracFone's trademarks, including, but not limited to, TRACFONE; TRACFONE NATIONWIDE PREPAID WIRELESS and Design; NET10; NET10 PAY AS YOU GO MADE SIMPLE and Design; SAFELINK WIRELESS; SAFELINK WIRELESS and Design; STRAIGHT TALK; STRAIGHT TALK and Design; TELCEL and Design; TELCEL AMERICA and Design; and TracFone's spiracle logo (collectively, the "TracFone Trademarks") and/or any reproduction, counterfeit, copy or colorable imitation of the TracFone Trademarks in connection with the Phone Switch Scheme (as defined in TracFone's Complaint), or in any manner likely to cause others to believe that the infringing products or services are connected with TracFone or TracFone's genuine products or services bearing the TracFone Trademarks; and,

c. passing off, inducing or enabling others to sell or pass off any TracFone phones; and,

d. committing any other acts calculated to cause purchasers to believe that the Lopez Defendants' products and services are TracFone's genuine products and services unless they are such; and,

e. shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner items falsely bearing the TracFone Trademarks, or any reproduction, counterfeit, copy or colorable imitation of same; and,

f. participating, either actively or passively, in the Phone Switch Scheme; and,

g. moving, destroying, or otherwise disposing of any products, labels, or other items, merchandise or documents bearing or relating to the TracFone Trademarks or any reproduction, counterfeit, copy or colorable imitation thereof; and,

h. removing, destroying or otherwise disposing of any computer tapes or disks, business records or documents relating in any way to distribution or sale of goods bearing the TracFone Trademarks or any reproduction, counterfeit, copy or colorable imitation thereof.

3. Any violation of the terms of this Preliminary Injunction is punishable, *inter alia*, by a finding of contempt of court.

4. This Preliminary Injunction shall remain in effect until further order of the Court or final disposition of this action.