**TRACFONE WIRELESS, INC., Plaintiff,**

v.

**Ricardo CABRERA, Jr., Defendant.**

Case No. 1:12–cv–20768.

United States District Court, S.D. Florida.

July 11, 2012.

James Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, Steven Jeffrey Brodie, Aaron Stenzler Weiss, Carlton & Fields PA, Miami, FL, for Plaintiff.

***ORDER GRANTING FINAL JUDG-MENT AND PERMANENT IN-JUNCTION AGAINST DEFEN-DANT RICARDO CABRERA. JR.***

JOAN A. LENARD, District Judge.

Plaintiff TracFone Wireless, Inc. ("TracFone") brought the above-captioned lawsuit against Defendant Ricardo Cabre-ra, Jr. asserting claims for conversion; common-law fraud; federal trademark in-fringement, 15 U.S.C. § 1114; federal un-fair competition and false advertising, 15 U.S.C. § 1125(a)(1); unjust enrichment; unauthorized access to a protected com-puter with intent to defraud, 18 U.S.C. § 1030(a)(4); unauthorized access to a pro-tected computer, 18 U.S.C. § 1030(a)(5)(C); civil conspiracy and viola-tions of Florida's Deceptive and Unfair Trade Practices Act.

### I. *Cabrera's Illegal Conduct*

According to TracFone, Cabrera is en-gaged in, and knowingly facilitates and encourages others to engage in, unlawful business practices involving the illicit sale to consumers across the country of stolen TracFone Prepaid Phones, prepaid airtime minutes, and other equipment for use on TracFone's service, and other violations of federal and state law (the "Illegal Airtime Fraud Scheme"). *Id.* at ¶ 2. As alleged in the Complaint, Cabrera is a former TracFone employee who has fraudulently represented himself as a TracFone dealer and fraudulently advertised stolen TracFone phones and airtime online through classified advertisements on web-sites like Craig's List. *Id.* at ¶ 30–31. Ca-brera's participation in the Illegal Airtime Fraud Scheme has caused damage and substantial and irreparable harm to TracFone. *See id.* at ¶ 44–49.

### II. *The Present Litigation*

As a result of Cabrera's theft and other illegal activities, TracFone asserted claims against Cabrera for conversion; common-law fraud; federal trademark infringe-ment, 15 U.S.C. § 1114; federal unfair competition and false advertising, 15 U.S.C. § 1125(a)(1); unjust enrichment; unauthorized access to a protected com-puter with intent to defraud, 18 U.S.C.

§ 1030(a)(4); unauthorized access to a protected computer, 18 U.S.C. § 1030(a)(5)(C); civil conspiracy and violations of Florida's Deceptive and Unfair Trade Practices Act.

The Court finds that all of the allegations in the complaint are well pled, and they are deemed admitted by virtue of Cabrera's default. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir.2009). TracFone has therefore succeeded in proving its claims and Cabrera is hereby permanently enjoined and liable to TracFone for the damages set forth herein. Further, the Court finds Cabrera has violated two orders of this Court: an April 11, 2012 order [DE 16] requiring him to appear at a May 10, 2012 deposition; and a May 15, 2012 order of this Court [DE 25] requiring him to show cause why he should not be held in civil contempt and sanctioned for his failure to appear at the deposition.

### DISCUSSION

### I. *Conversion (Count One)*

■ In order to establish a claim for conversion, TracFone must prove the following three elements: "(1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1294 (S.D.Fla.2001) (citing *Warshall v. Price,* 629 So.2d 903, 904 (Fla. 4th DCA 1993) (analyzing each element to find that plaintiff had established conversion claim)).

■ The evidence demonstrates that TracFone has the right to provide its telecommunications services to the public and Cabrera has no such privilege or right. Compl., ¶ 22. Moreover, Cabrera knew or should have known that TracFone is the owner of the Marks and that Cabrera had no legal right to use the Marks on their infringing products and services. *Id.,* ¶ 51.

Finally, Cabrera knew or should have known that TracFone is the owner of a Lenovo ThinkPad T510 (the "Computer") which Cabrera stole and kept for his own personal use. *Id.,* ¶ 18. Cabrera was wrongfully interfering with TracFone's rights by engaging in the Illegal Airtime Fraud Scheme and caused substantial harm to TracFone. *Id.,* ¶ 53. Therefore, Cabrera's actions constitute conversion.

### II. *Common Law Fraud Claim (Count Two)*

■ To prevail on a claim for fraud, TracFone must demonstrate a "(1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." *Zarrella v. Pacific Life Ins. Co.,* 755 F.Supp.2d 1231, 1237 (S.D.Fla.2011)

■ TracFone has properly established fraud by Cabrera. Upon information and belief, as part of the Illegal Airtime Fraud Scheme, Cabrera regularly and systematically uses TracFone codes and other identifiers to access TracFone's proprietary computer system over the internet or through TracFone representatives over the telephone. [DE 1 at ¶ 54.] In so doing, Cabrera misrepresents to TracFone, on an ongoing basis, that he is authorized to obtain TracFone prepaid airtime for use on TracFone's Prepaid Wireless Service. *Id.* Cabrera knew that he was not authorized to obtain TracFone prepaid airtime in the manner described herein. *Id.,* ¶ 55. Further, Cabrera intended for TracFone to rely on his misrepresentations so as to obtain the TracFone prepaid airtime for use on TracFone's Prepaid Wireless Services. *Id.,* ¶ 56. TracFone's reliance on Cabrera's misrepresentations was reasonable as Cabrera presented the codes and identifiers neces-

sary for the legitimate transmittal of TracFone prepaid airtime. *Id.,* ¶ 57. Further, TracFone was harmed as a result of Cabrera's' actions. *Id.,* ¶ 58. Thus, Cabrera's actions constitute fraud.

### III. *Trademark–Related Claims (Counts Three and Four)*

Section 32(1) of the Lanham Act protects against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) of the Lanham Act states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, or,
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

 "[T]he Court interprets this Section [§ 43(a) ] as having created a federal cause

of action for infringement of unregistered trademark or trade dress and concludes that such a mark or trade dress should receive essentially the same protection as those that are registered." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring). Thus, in order to prevail on a claim of trademark infringement under Sections 32 and 43, TracFone must demonstrate that (1) it has a valid, protectable mark and (2) that defendant's use of the mark is "likely to cause confusion, or to cause mistake, or to deceive."

### A. Valid and Protectable Mark

Pursuant to Section 7(b) of the Lanham Act, a certificate of registration of a trademark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). Moreover, the Eleventh Circuit strongly presumes registered marks to be valid. *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.,* 934 F.2d 1551, 1562 (11th Cir.1991); *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1184–1185 (5th Cir.1980). If a registered trademark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to a limited number of defenses. *See* 15 U.S.C. § 1115(b); *Soweco,* 617 F.2d at 1184–1185.

 In addition to the legal presumption afforded to registered trademarks, TracFone's Marks are also valid because they have acquired secondary meaning.[1]

---

**1.** The Eleventh Circuit has set forth a number of factors to be considered in determining

whether a mark has acquired secondary meaning, including:

Indeed, TracFone's Marks are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality. [DE 1 at ¶ 28] As a result of the high quality of TracFone's products, services, sales, promotion and advertising, the Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone. *Id.*

## B. Likelihood of Confusion

■ The Eleventh Circuit considers seven factors to determine whether there is a likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media used; (6) defendant's intent; and, (7) actual confusion. *See Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989). Each of these factors demonstrates that Cabrera's stolen and unauthorized products is likely to cause confusion.

### 1. Type of Mark

Courts determine the level of protection to be afforded a mark based upon the mark's strength: the stronger the mark, the greater the scope of protection. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999). Marks can be grouped into one of four categories: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Id.* Third party use of the Marks is another important factor in determining a mark's strength—"[t]he less that third parties use the mark, the stronger it is,

(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the [mark] and the plaintiff's product or business; and

and the more protection it deserves." *Frehling Enters., Inc.,* 192 F.3d at 1336. The final factor to consider in determining the strength of a mark is whether it is "incontestable"—the strength of the mark is enhanced if the United States Patent and Trademark Office has declared a mark "incontestable." *Id.*

TracFone's Marks—which are arbitrary marks—are due considerable protection based on the foregoing factors. An arbitrary mark, such as 'Sun Bank' when applied to banking services, is one that bears no relationship to the product and is the strongest types of mark. *Id.* at 1335–36. Just as the "Sun Bank" mark is arbitrary as applied to banking services, *see id.,* TracFone's Marks are arbitrary as applied to prepaid phone service and are entitled to substantial protection. *Id.* at 1335–36. Second, only TracFone and its affiliates use the Marks. *See Frehling Enters., Inc.,* 192 F.3d at 1336 (finding that no third-parties use the marks is another indication of the strength of the Marks). Finally, the TracFone trademark is "incontestable" and, therefore, entitled to another layer of protection.

### 2. Similarity of the Marks

In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc.,* 192 F.3d at 1337. In this case, the Marks used in Cabrera's fraudulent advertisements and displayed on Cabrera's stolen products are identical. Cabrera's use of TracFone's Marks in connection with the sale of TracFone Phones,

(4) the extent to which the public actually identifies the [mark] with the plaintiff's product or venture.
*Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir.1984).

prepaid airtime and other products has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Cabrera's products and services, and the existence of a business relationship between TracFone and Cabrera. Cabrera's infringing scheme thus causes confusion among consumers. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.,* 303 F.3d 1242, 1248 (11th Cir.2002).

### 3. Similarity of the Products the Marks Represent

"The greater the similarity between the products and services, the greater the likelihood of confusion." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir.1985). Cabrera's infringing phones are identical to authorized TracFone Phones.

### 4. Similarity of the Parties' Retail Outlets and Customers

"This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enters., Inc.,* 192 F.3d at 1339. Cabrera's unauthorized and infringing phones and pin numbers are sold through classified advertisements on websites like Craig's List and appear to the customer as an authorized TracFone product. Cabrera is targeting the same consumers as TracFone—individuals looking for affordable, high quality wireless telephones. *See AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1541 (11th Cir.1986) ("[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers").

### 5. Similarity of Advertising Media

"This factor looks to each party's method of advertising." *Id.* Although TracFone's advertising is much more extensive than Cabrera's, Cabrera also advertises on the internet. *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.,* 628 F.2d 500, 505 (5th Cir.1980) (finding the greater the similarity between the advertising campaigns, products and services, the greater the likelihood of confusion).

### 6. Defendant's Intent

This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Frehling Enters., Inc.,* 192 F.3d at 1340. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1179 (11th Cir.1994); *Frehling Enters., Inc.,* 192 F.3d at 1340. The infringing scheme here includes selling phones with TracFone's Marks intact, which demonstrates that Cabrera seeks to derive a benefit from TracFone's business reputation. Moreover, Cabrera has been fraudulently representing that he is an authorized TracFone dealer and has offered to make others "authorized" wholesalers of TracFone Phones and PIN numbers.

### 7. Actual Confusion

"The law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding *of likelihood* of confusion." *E. Remy Martin,* 756 F.2d at 1529; *Montgomery v. Noga,* 168 F.3d 1282, 1302 (11th Cir.1999) ("[W]e have held that a plaintiff is not required to provide evidence of actual confusion in order to prove *likelihood* of confusion."). Adopting an identical mark "with the intent of deriving benefit from the reputation of [Plaintiff's mark] may alone be enough to justify the inference that there is confusing similarity." *AmBrit,* 812 F.2d at 1542; *see also Int'l Cosmetics Exch., Inc.,* 303 F.3d at 1248–49 (holding that concurrent use of same mark on similar product was sufficient to demonstrate a likelihood of confusion); *Babbit Electronics, Inc.,* 38 F.3d at 1179–80 (finding a likelihood of confusion despite a lack of evidence of actual confusion).

Based on the evidence presented, the parties sell identical, directly competing products to the same purchasers through the same channels of trade utilizing the same advertising vehicles. Therefore, there is a strong likelihood of confusion as to the source of the products.

## C. Attorneys' Fees

■ The Lanham Act also gives the Court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate, and willful." *Punch Clock, Inc. v. Smart Software Development,* 553 F.Supp.2d 1353, 1359 (S.D.Fla. 2008) (citing *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994)). In addition, a case may be deemed "exceptional" and merit an award of attorneys' fees under the Lanham Act when the defendant disregards legal proceedings and does not appear. *See Pet-Med Express v. MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1220 (S.D.Fla.2004) (citing *Arista Records, Inc. v. Beker Enters.,* 298 F.Supp.2d 1310, 1313 (S.D.Fla.2003)); *Rib City Group, Inc. v. RCC Restaurant Corp.,* 2010 WL 4739493 at *2–3 (M.D.Fla. Nov. 16, 2010) (finding an exceptional case based in part on defendants' failure to appear and answer the allegations and awarded $23,400.00 in attorneys' fees). Based on Cabrera's violations of Court order and willful trademark violations, the Court will exercise its discretion to award attorneys' fees and costs. *See Tiramisu Intern. LLC v. Clever Imports LLC,* 741 F.Supp.2d 1279, 1297 (S.D.Fla.2010) (after entering a default judgment, the court awarded attorneys' fees in the amount of $56,623.25 and costs in the amount of $145.00 for defendants' trademark infringement).

## IV. Unjust Enrichment (Count Five)

■ To prevail on a cause of action for unjust enrichment, a plaintiff must show that: 1) a benefit was conferred on defendant, 2) defendant had knowledge of the benefit conferred, 3) defendant accepted and retained the benefit, and 4) it would be inequitable for defendant to retain the benefit without compensation to the plaintiff. *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.,* 764 So.2d 672, 675 (Fla. 3rd DCA 2000). Courts have held that a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists. *Morris v. ADT Sec. Services,* 580 F.Supp.2d 1305, 1312–13 (S.D.Fla.2008) (claim for unjust enrichment may proceed where plaintiff has not asserted a claim based on an express contract).

■ By stealing and reselling TracFone Phones, prepaid airtime minutes, and using TracFone's Marks, Cabrera obtained benefits from TracFone that have resulted in significant financial benefits to Cabrera. [DE 1 at ¶ 72]. By stealing the Computer, Cabrera obtained benefits from TracFone that have resulted in significant financial benefits to Cabrera. [DE 1 at ¶ 73]. Cabrera acquired the benefits voluntarily and with full knowledge. *Id.* at ¶ 74. Cabrera has retained the benefits under such circumstances that make it unjust and inequitable for Cabrera to retain the benefits without paying TracFone the value of the benefits Cabrera acquired. *Id.* at ¶ 75. Therefore, Cabrera has been unjustly enriched by his actions.

## V. Unauthorized Access to A Protected Computer (Counts Six and Seven)

### A. Cabrera is Violating 18 U.S.C. § 1030(a)(4)

To prevail on a claim under 18 U.S.C. § 1030(a)(4) of The Computer Fraud and Abuse Act ("CFAA"), the plaintiff must establish that the defendant: (1) knowingly and with intent to defraud;[2] (2) ac-

2. "Intent to defraud" under Section 1030(a)(4) "simply means wrongdoing ..."

cessed a protected computer without authorization; (3) obtained anything of value; and (4) caused a loss and damages aggregating at least $5,000. *See* 18 U.S.C. §§ 1030(a)(4), 1030(c)(4)(A)(i)(I), 1030(g).

■ Cabrera knowingly, and with the intent to defraud, accesses TracFone's proprietary computer system by providing an improperly obtained and/or retained prepaid airtime codes, electronic serial numbers, ESNs, IMEIs, SIM card serial numbers, and other codes and access numbers. [DE 1 at '80]. Cabrera was not authorized to access the proprietary computer system in this way. [DE 4-1 at 122].

Cabrera's conduct was not authorized by TracFone, and also exceeds authorized access, as defined by Section 1030(e)(6) of the CFAA, in that Cabrera accessed TracFone's proprietary computer system and telecommunications network by misrepresenting to TracFone that he was authorized to access the system and network, and Cabrera used such access to alter information in the system and obtain stolen airtime and services from TracFone (which he was not entitled to alter or obtain). Cabrera uses the improperly obtained prepaid airtime and other products to fraudulently access TracFone's telecommunications network and sell stolen airtime minutes and other products for profit.

TracFone has suffered the requisite "loss" and "damage" as defined under the CFAA. According to the statute, "loss" includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, systems, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service." *See* 18 U.S.C. § 1030(e)(11). The

term "damage" is defined in the statute to mean "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. § 1030(e)(8). The "word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state," and when a defendant "infiltrated the plaintiff's computer network … and collected and disseminated confidential information [even if] no data was physically changed or erase …, an impairment of its integrity occurred." *Shurgard*, 119 F.Supp.2d at 1126–27.

TracFone has satisfied these standards here. Cabrera's actions have substantially harmed TracFone by, among other things: defrauding TracFone out of airtime (a valuable TracFone resource), disrupting its profitable relationships with its dealers and customers, consuming the valuable time of TracFone customer service and fraud department personnel, illegally accessing TracFone computers to obtain airtime, and depriving TracFone of the opportunity to earn profits by providing wireless service to legitimate TracFone consumers. [DE 4-1 at ¶ 25-32, 88]. TracFone has spent well in excess of $20,000 investigating and assessing the possible impairment to the integrity of its proprietary computer and wireless networks and conducting a damage assessment regarding Cabrera's collection and dissemination of TracFone airtime minutes. *Id.* at ¶ 36. Further, by infiltrating the TracFone computer system and telecommunications network and collecting and disseminating the airtime minutes, and activating the wireless telephones and other products on TracFone's network, Cabrera has substantially impaired the integ-

---

whereby "the defendant participated in dishonest methods to obtain the plaintiff's secret information." *Shurgard Storage Ctrs., Inc. v.*

*Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121, 1126 (W.D.Wash.2000).

rity of TracFone's systems in an amount in excess of $5,000.

Cabrera's Illegal Airtime Fraud Scheme Scheme also harmed TracFone by depriving TracFone of the means to control the quality of its products and services, diluting the TracFone Marks, substantially harming TracFone's business reputation and goodwill and leading to a greater likelihood of confusion, mistake, and deception as to the quality and source of origin of TracFone products and services unlawfully sold by Cabrera, and as to the relationship between TracFone and Cabrera. *Id.* at ¶ 25–32, 88.

### B. Cabrera is Violating 18 U.S.C. § 1030(a)(5)(C)

Section 1030(a)(5)(C) makes it unlawful to intentionally access a protected computer without authorization and cause damage and loss. For the reasons discussed above, Cabrera has intentionally accessed TracFone's protected computers without authorization. TracFone suffered loss and was damaged in the process, as explained above. Accordingly, the Court finds that Cabrera has violated Section 1030(a)(5)(C) of the CFAA.

### VI. *Civil Conspiracy (Count Eight)*

■ To properly state a claim for civil conspiracy, a plaintiff must allege "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam Cty.*, 616 So.2d 562, 565 (Fla. 5th DCA 1993).

■ The evidence shows Cabrera worked in concert with other individuals who were engaged in the unlawful reselling of TracFone Phones and airtime. [DE 1 at ¶ 105]. Furthermore, as a result of the conspiracy, TracFone has suffered damages in the form of lost sales, lost profits, inability to supply retailers with sufficient volume of Phones, and loss of business reputation and goodwill. [DE 1 at ¶¶ 44–49] Accordingly, Cabrera has actively participated in a civil conspiracy in violation of Florida common law. *Florida Fern Growers Assoc.*, 616 So.2d at 565.

### VII. *Unfair Competition/ Deceptive Trade Practices Claim (Count Nine)*

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") declares the following actions unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). In order to state a claim for relief under FDUTPA, TracFone "must demonstrate that it was aggrieved by an act or practice that constitutes a 'violation of this part.'" *Sun Protection Factory, Inc. v. Tender Corp.*, No. 604CV732ORL19KRS, 2005 WL 2484710, at *13 (M.D.Fla. Oct. 7, 2005). "Engaging in trademark infringement is an unfair and deceptive trade practice that constitutes a 'violation of this part.'" *Id.*

■ TracFone has established its trademark claims and Cabrera conduct in the Illegal Airtime Fraud Scheme as described above was willful and constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.204. [DE 1. at ¶ 108]. TracFone suffered damage as a result of Cabrera's conduct. *Id.* at ¶ 109. Accordingly, TracFone has prevailed on its FDUTPA claim.

### CONCLUSION

1. The motion for default final judgment is **GRANTED.** Final judgment is

hereby entered in favor of Plaintiff, TRACFONE WIRELESS, INC. and against Defendant, RICARDO CABRERA, JR.

2. Pursuant to 15 U.S.C. § 1117, TracFone is entitled to actual damages, which have been trebled, in the amount of $378,000.00 for its lost profits. Pursuant to 18 U.S.C. § 1030(a), TracFone is also entitled to compensation for damages (as defined in § 1030(e)(8)) in the amount of $5,000.00 and losses (as defined in § 1030(e)(11)) in the amount of $20,000.00. TracFone is also entitled to $1,600 in damages for Cabrera's theft of TracFone's Lenovo ThinkPad T510 computer. Therefore, final judgment is entered against Defendant, Cabrera in the principal amount of $404,600.00 which shall bear interest at the legal rate, for which let execution issue forthwith.

3. The Court also finds that TracFone is entitled to an award of attorneys' fees and costs. Plaintiff, TracFone Wireless, Inc. has ten business days from the date of this order to file its petition for attorneys' fees and costs.

4. The Court further finds that Cabrera's participation in the Illegal Airtime Fraud Scheme has caused substantial and irreparable harm to TracFone, and will continue to cause substantial harm to TracFone unless enjoined.

5. TracFone is entitled to permanent injunctive relief on the claims set forth in the Complaint.

6. Defendant, Cabrera and each and all of Cabrera's respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, principals, agents, employees, attorneys, accountants, investigators, consultants, and all other persons or entities acting or purporting to act for it or on its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with Cabrera or Cabrera's representatives, agents, assigns, parent entities, employees, independent contractors, accountants, attorneys, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with Cabrera, shall be and hereby are PERMANENTLY ENJOINED from:

a. purchasing, selling, advertising, soliciting, using, transferring, and/or shipping, directly or indirectly, any TracFone products and services, including, but not limited to, TracFone prepaid airtime cards, TracFone prepaid airtime minues, TracFone codes, and/or other mechanisms, processes, methods, or materials used to obtain TracFone wireless service or acquire TracFone airtime, including but not limited to the methods employed by the Illegal Airtime Fraud Scheme;

b. facilitating or in any way assisting other persons or entities who Cabrera knew or should have known are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the obtaining and re-selling of unlawfully obtained TracFone prepaid airtime minutes;

c. knowingly using the TracFone, NET10, or Straight Talk, trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with the TracFone, NET10, or Straight Talk Trademarks, without TracFone's prior written authorization; and

7. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction.

8. If any Cabrera violates the terms of the permanent injunction, TracFone shall

be entitled to file an affidavit or declaration of violation requesting that the Court order the payment of compensatory damages to TracFone in the amount of Twenty Thousand Dollars and No Cents ($20,000) for each violation. The Court finds that any amounts awarded under this paragraph are compensatory and reasonable estimations of the minimum damages suffered by TracFone for such a breach and will serve to compensate TracFone for its losses in the event Cabrera violates a term of this permanent injunction.

9. Any violation of the terms of this preliminary injunction may be punishable by a finding of contempt of court.

10. The prevailing party in any proceeding to enforce compliance with the terms of this preliminary injunction shall be entitled to its attorneys' fees and costs incurred thereby.

11. Plaintiff is also entitled to a writ of replevin for the Computer, which is wrongful in the possession of Ricardo Cabrera due to his tortious conversion of Plaintiff's property. If the Computer is replevied, $1,600.00 shall be set off against the final money judgment. TracFone shall file a verified motion for writ of replevin within seven (7) days of entry of this order.

12. The current address of Defendant, Ricardo Cabrera, Jr. is 10982 S.W. 4th Street, Miami, Florida 33174.

13. The address of Plaintiff, TracFone Wireless, Inc. is 9700 Northwest 112th Avenue, Miami, Florida 33178.

14. The Court finds that there is no just reason for delay of the entry of judgment against Ricardo Cabrera, Jr., and therefore, pursuant to Fed.R.Civ.P. 54(b), directs the Clerk to enter judgment as set forth herein.