**TRACFONE WIRELESS, INC., Plaintiff,**

v.

**CLEAR CHOICE CONNECTIONS, INC., CCC, Inc., and Amy Suleiman, Defendants.**

Case No. 13–CV–23066.

United States District Court, S.D. Florida.

Signed April 23, 2015.

Filed April 27, 2015.

Ethan Horwitz, Carlton Fields Jorden Burt, P.A., New York, NY, James Blaker Baldinger, West Palm Beach, FL; Morgan Lowery Swing, Carlton Fields, P.A., Jonathan Joseph Rodriguez, Greenberg Traurig, Miami, FL, for Plaintiff.

Charles A. Nemer, Michael W. Vary, McCarthy, Lebit, Crystal & Liffman Co., L.P.A., Cleveland, OH, Joseph William Bain, Shutts & Bowen LLP, West Palm Beach, FL, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KATHLEEN M. WILLIAMS, District Judge. .

THIS MATTER is before the Court on Plaintiff's Renewed Motion for Preliminary Injunction [D.E. 74]. Defendants have filed a response in opposition to the motion [D.E. 82], and Plaintiff has filed a reply in support of the motion [D.E. 87]. The Court heard oral arguments on this motion at a hearing on April 9, 2015. For the reasons stated below, the Motion [D.E. 74] is GRANTED. ,

### I. Background

Plaintiff TracFone is the "largest provider of pre-paid wireless telephone services in the United States" [D.E. 30 ¶ 10]. Defendant Clear Choice Connections is an Ohio corporation that has marketed TracFone products through five websites it maintains under six domain names [D.E. 16 at 1–2]. TracFone alleges that Clear Choice has infringed on its marks by including the marks in Clear Choice's Internet domain names, thereby causing confusion among consumers as to the source, sponsorship or affiliation of the websites [D.E. 74 at 8]. With this motion TracFone seeks a preliminary injunction barring Clear Choice from using TracFone marks or similar marks in their domain names during the pendency of this action.[1]

In opposing this motion, Clear Choice argues that it had an implied license to use TracFone's marks, by virtue of an agreement with Cellucom Distribution, Inc., a "master agent" of TracFone's [D.E. 82 at 9–11]. Clear Choice further argues that it was entitled to use the marks under nominative fair use doctrine and the "naked license" doctrine because TracFone had effectively abandoned their marks. *Id.*

### II. Standard of Review

A district court may grant a preliminary injunction only if the moving party shows that: . "(1) it has .a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *America's Health Ins. Plans· v. Hudgens,* 742 F.3d 1319, 1329 (11th Cir.2014) (internal citation omitted). A preliminary injunction is considered "an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion for each prong of the analysis." *Id.* (internal quotations and citations omitted).

To establish a substantial likelihood of success on the merits, a plaintiff must demonstrate a likelihood of success at trial as to both its *prima facie* case and the affirmative defenses asserted by the defendant. *See ·Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.,* 642 F.Supp. 1031, 1034 (N.D.Ga.1986); *see also Metro–Goldwyn–Mayer, Inc. (MGM) v. Showcase Atlanta Cooperative Productions, Inc.,* 479 F.Supp. 351, 355 (N.D.Ga. 1979) (citing *Canal Authority of St. of Fla. v. Callaway,* 489 F.2d 567 (5th Cir.1974)).

### III. Analysis

#### A. Likelihood of Success on the Merits

TracFone argues that likelihood of success on the merits is apparent because it

---

1. In its original motion, TracFone also sought to enjoin Defendants from using TracFone's marks in "meta tags" that increase traffic to Defendants' web sites. However, TracFone dropped this request for relief from its motion at the April 9, 2015, hearing on this matter.

has a valid mark, and it has adequately established a *prima facie* case of trademark infringement [D.E. 74 at 8–16]. Clear Choice argues that its affirmative defenses of nominative fair use, license and naked license should defeat TracFone's infringement claims, and TracFone is therefore not likely to succeed on the merits [D.E. 82 at 6–13].[2]

### 1. Clear Choice's Nominative Fair Use Defense

■ The Nominative Fair Use Doctrine "requires a defendant to show that: (1) the plaintiff's mark is necessary to identify plaintiffs product; (2) in doing so defendant does not use more of plaintiffs mark than necessary; and (3) the defendant's conduct or language reflect[s] the true and accurate relationship between plaintiff and defendant's products or services." *Ford Motor Co. v. O.E. Wheel Distrib., LLC*, 868 F.Supp.2d 1350, 1368 (M.D.Fla.2012) (internal citations omitted). TracFone argues that this defense is meritless because Clear Choice's use of the marks in its domain names was not the minimum use necessary to identify TracFone's products [D.E. 74 at 11]. The Court agrees. Clear Choice's use of TracFone's marks in Internet domain names goes beyond what is necessary to identify TracFone's products. *See PAC-CAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 256 (6th Cir.2003) (finding that a defendant's use of a plaintiffs marks in domain names does not qualify as nominative fair use). The Court finds that TracFone's infringement claims are likely to withstand this defense.

### 2. Clear Choice's Licensing and Naked Licensing Defenses

Clear Choice argues that it is entitled to use TracFone's marks pursuant to an implied license granted as part of its "agreement" with Cellucom to be a dealer/distributor of TracFone's products [D.E. 82 at 9–10].[3] TracFone asserts that Clear Choice and other retailers may only use specific artwork to promote TracFone's products, and that the allowable use of this artwork does not create an implied license to use its marks in domain names or in any other way [D.E. 87 at 5–7].

■ A court may find an implied license "when such a license can be reasonably inferred from the objective conduct of the parties." *Ford*, 868 F.Supp.2d at 1370. An implied license may be created by "any language used by the owner of the [intellectual property] or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the [intellectual property] in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09–61490–CIV, 2011 WL 2174012, at *6 (S.D.Fla. June 2, 2011). The existence of an implied license is a fact question for the jury, as is the scope of an implied license. *Bangkok Broadcasting v. IPTV Corp.*, 742 F.Supp.2d 1101, 1113 (C.D.Cal.2010); *Natkin v. Winfrey*, 111 F.Supp.2d 1003, 1012 (N.D.Ill.2000).

■ The only conduct that Clear Choice cites as evidence of an implied license is the fact that Cellucom, TracFone's master wholesaler, appeared to agree to allow

---

2. Clear Choice also seeks to rely on the affirmative defense of first sale or exhaustion [D.E. 82 at 5–6]. However, the Court previously denied Clear Choice's motion to amend its Answer to include this affirmative defense [*see* D.E. 86], Therefore the Court will not consider this defense in ruling on this motion.

3. At the April 9, 2015, hearing, Clear Choice's counsel stated that it is arguing only that Clear Choice had an implied license, not an express license.

Clear Choice to be a retailer of TracFone products, that Clear Choice was provided access to designated TracFone artwork and an Internet portal of customer accounts, and that TracFone allowed Cellucom to select the retailers of TracFone's products [D.E. 82 at 9–11]. Even if the Court were to conclude that a factfinder could find an implied license based on these limited facts, Clear Choice has not shown how its use of TracFone's marks would fall within the scope of this implied license. A license is "a limited grant of authority to use a trademark in a defined way. Another use is not authorized by the grant and is a breach [of the license]." *Bunn–O–Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914, 921–22 (C.D.Ill.2000); *see also* 4 McCarthy on Trademarks § 25:30 ("[t]he licensee's use of the mark in a composite or format appearance other than that permitted by the license constitutes an infringement"). Because there has been no evidence presented that would allow a reasonable factfinder to conclude that Clear Choice's use of the marks in its domain names was within the scope of an implied license (assuming that there is sufficient evidence of the existence of an implied license), the Court finds that TracFone's infringement claims are likely to defeat this defense.

■ Nor does Clear Choice's naked license defense appear likely to succeed. Clear Choice argues that TracFone has failed to exercise control over its marks, and TracFone is therefore estopped from challenging Clear Choice's use of the marks [D.E. 82 at 11–12]. "It is true that the law imposes a duty upon a licensor (such as a franchisor) to supervise a licensee's use of the licensor's own trademark." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519 (11th Cir. 1992) (citing *Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.*, 872 F.2d 1547, 1551 (11th Cir.1989)). Most circuits, including the Eleventh Circuit, have held

that such "naked licensing" may lead to abandonment of the mark. *See Mini Maid*, 967 F.2d at 1519 ("[the] duty of supervision derives from the Lanham Act's abandonment provisions, which specify that a registrant's mark may be canceled if the registrant fails to control its licensees' use of the licensed mark"); *see also Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir.1994); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075–76 (5th Cir.1997); *Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir.2006); *Dawn Donut Co. v. Hart's Food Stores*, 267 F.2d 358, 367 (2d Cir. 1959). But "because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy' or 'strict burden of proof.'" *Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1175 (11th Cir.2002). Given the "heavy" burden required to show that TracFone abandoned its marks by naked licensing, and the minimal evidence of an implied license from TracFone to Clear Choice, the Court finds that TracFone's infringement claims are likely to prevail over Clear Choice's naked licensing defense.

### 3. TracFone's Trademark Infringement Claim

■ To demonstrate a likelihood of success on the merits of a trademark infringement claim, a plaintiff must demonstrate (1) that its mark has priority, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *See Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F.Supp.2d 1350, 1353 (S.D.Fla.2002). Courts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similari-

ty of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999). Of these factors, the type of mark and evidence of actual confusion are considered the most important. *Id.* (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir.1989)). However, likelihood of confusion should not be determined "by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists ... [r]ather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir.2012) (quoting *Am-Brit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987)); *see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) ("Because the bottom line is the likelihood of confusion, application of the *Frehling* factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.' ")

■ In opposing TracFone's motion, Clear Choice does not dispute the validity of TracFone's marks, but argues that TracFone cannot show that Clear Choice's use of the mark creates a likelihood of confusion among consumers [D.E. 82 at 14–18].

**a. Type of Mark**

■ Classifying the type of mark requires a determination of whether Plaintiff's mark is strong or weak. *Frehling*, 192 F.3d at 1335. The stronger the mark, the greater the scope of protection afford-

ed to it. *Id.* A mark may fall into one of four categories of distinctiveness, in increasing levels of protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *Id.* These categories are based on the relationship between the name and the service or good it describes. *Id.* Generic marks refer to a particular genus or class of goods or service providers that includes the plaintiff; these marks are not entitled to protection. *Id.* (citing *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n. 5 (11th Cir.1985)). Descriptive marks describe a characteristic or quality of an article or service. *Id.* If a word or mark is found to be descriptive, it is protected only if the owner can show the mark has acquired secondary meaning. *Tancogne v. Tomjai Enters. Corp.*, 408 F.Supp.2d 1237, 1244 (S.D.Fla.2005). To establish a secondary meaning, a plaintiff must show that the primary significance of the term in the minds of the consuming public is "not the product, but the producer." *Id.*

■ Suggestive marks "subtly connote something about the service so that a customer could use his or her imagination and determine the nature of the service." *Freedom Savings*, 757 F.2d at 1182 n. 5. An arbitrary mark is a "word or phrase that bears no relationship to the product." *Frehling*, 192 F.3d at 1335. Arbitrary marks are the strongest of the four categories. *Id.* at 1335–36.

Clear Choice argues that the three marks at issue—NET10, Simple Mobile and REUP—are terms commonly used in telecommunications, and are therefore weak marks that merit no protection [D.E. 82 at 14–15]. TracFone argues that NET10 is "arbitrary," and therefore entitled to the highest level of protection, and that Simple Mobile and REUP are suggestive marks [D.E. 74 at 9–10].[4]

---

4. TracFone also asserts that NET10 is an "incontestable" mark within the meaning of 15
U.S.C. § 1065 [D.E. 74 at 8], A mark achieves "incontestable" status "if it has been regis-

Several courts in this circuit have examined the strength of the NET10 mark and concluded that this mark, as applied to prepaid phone service, is arbitrary and therefore entitled to substantial protection. *See, e.g., TracFone Wireless, Inc. v. SND Cellular, Inc.,* 715 F.Supp.2d 1246 (S.D.Fla.2010); *TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.,* 843 F.Supp.2d 1284 (S.D.Fla.2012); *TracFone Wireless, Inc. v. Anadisk LLC,* 685 F.Supp.2d 1304 (S.D.Fla.2010); *TracFone Wireless, Inc. v. Cabrera,* 883 F.Supp.2d 1220 (S.D.Fla. 2012). Clear Choice argues that these cases should be afforded little weight because they were decided on default judgment [D.E. 82 at 16]. However, one court in a contested (albeit *pro se*) matter recently concluded that NET10 qualifies at least as a suggestive mark because it requires "some imagination (if very little) by the consumer to be understood as pertaining to cellular phone service." *TracFone Wireless, Inc. v. Washington,* 978 F.Supp.2d 1225, 1231 (M.D.Fla.2013). Upon an independent review of the mark and the Parties' arguments, the Court agrees with the analysis in *Washington* and finds that NET10 is, at least, a suggestive mark that merits strong protection.

TracFone argues that Simple Mobile and REUP are also suggestive marks because they require a consumer to make a "subtle leap in thought" to conclude that these marks connote goods or services in the telecommunications field [D.E. 74 at 9–10].[5] In response, Clear Choice argues that the marks are "inherently weak" and that TracFone has failed to provide evidence of the strength of these marks in the form of consumer surveys [D.E. 82 at 14–15]. But Clear Choice has cited no authority for the proposition that a plaintiff must provide consumer survey evidence to show that its marks are strong.[6] Clear Choice also argues that these marks have been weakened by third-party use. *Id.* at 15–16. *See Michael Caruso and Co., Inc. v. Estefan Enters., Inc.,* 994 F.Supp. 1454, 1459–60 (S.D.Fla.1998) (finding that "extensive third party use" of a term can weaken a mark). However, while it as-

---

tered for five years with the Patent & Trademark Office, its holder has filed the affidavit required by 15 U.S.C. § 1065(3) with the Patent & Trademark Office, and the Patent & Trademark Office has accordingly declared the mark "incontestable." *Frehling,* 192 F.3d at 1336. Though TracFone has provided evidence that NET10 was registered with the Patent & Trademark Office in 2005 [D.E. 30–1], it has not shown that it filed the required affidavit with the Patent & Trademark Office under 15 U.S.C. § 1065(3), or that the Patent & Trademark Office has declared the mark "incontestable." Therefore the Court cannot find on this record that the NET10 mark is "incontestable."

**5.** TracFone further argues that Clear Choice's "intentional copying" of its marks is itself evidence that the marks had at least acquired secondary meaning. *See Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.,* 716 F.2d 854, 859–860 (11th Cir.1983). However, the Court does not believe *Brooks* is applicable in this case, where the defendants are accused of adopting the plaintiff's authentic marks for their own use rather than "intentionally copying" the marks. *See id.* at 859 n. 13 ("[T]here is a difference between "intentional copying" and adopting a mark or design "with intent to benefit from" another person's mark").

**6.** While consumer survey evidence may be used to show that a mark has acquired a secondary meaning, in the absence of such evidence courts may consider four factors: "(1) the length and manner of the mark's use; (2) the nature and extent of advertising and promotion; (3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the name and the plaintiffs business; and (4) the extent to which the public actually identifies the name with the plaintiffs service." *Coach House Rest., Inc. v. Coach and Six Rests., Inc.,* 934 F.2d 1551, 1560 (11th Cir.1991). But where, as here, a court finds that a mark is suggestive rather than descriptive, "no proof of secondary meaning is required for it to be protectable." *Id.*

serts in its papers that "simple," "mobile" and "net" are commonly used in registered marks based on a "simple search" of publicly available trademark records [D.E. 82 at 15], Clear Choice has not put before the Court any evidence of search results.[7] After reviewing the marks and the Parties' arguments, the Court finds that Simple Mobile and REUP qualify as suggestive marks, because they require some imagination on the part of consumers to understand these marks as pertaining to telecommunication services. Accordingly, the Court finds that TracFone's marks are strong marks, and this factor weighs in favor of a finding of a likelihood of confusion.

**b. Similarity of the Marks**

 Next, the Court must determine the degree to which the two marks are similar. In making this determination, the Court must consider "the overall impressions that the marks create, including the sound, appearance and manner in which they are used." *Frehling*, 192 F.3d at 1337. Because Clear Choice has adopted TracFone's marks, it is clear that this factor favors a finding of a likelihood of confusion.

**c. Similarity of the Products the Marks Represent**

 Under this factor, the Court must examine whether the parties' services "are the kind that the public attributes to a single source." *Id.* at 1338 (citing *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985)). The proper test does not turn on whether the services can be distinguished by consumers, but on whether the services "are so related in the minds of consumers that they get the sense that a single producer is likely to" offer both

7. Notably, Clear Choice does not allege that "REUP" is used in any marks registered to

services. *Id.* Both TracFone and Clear Choice are in the business of providing "identical" TracFone products to retail customers [D.E. 74 at 8; D.E. 82 at 16]. The Court finds that a consumer would reasonably conclude that the products and services offered by TracFone and Clear Choice are attributable to a single source. Accordingly, this factor favors a finding of a likelihood of confusion.

**d. Similarity of the Parties' Trade Channels and Customers**

 "Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods [or services] lessen the possibility of confusion, mistake or deception." *Frehling*, 192 F.3d at 1339 (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)). This factor takes into consideration where, how and to whom the services are sold. *Id.* The Court also must consider the level of sophistication and investment required of the parties' customers, which can influence the likelihood of confusion based on a mark. *See Freedom Savings*, 757 F.2d at 1185. While "the parties' outlets and customer bases need not be identical, some degree of overlap should be present" to weigh in favor of a likelihood of confusion. *Frehling*, 192 F.3d at 1339.

Clear Choice argues that its trade channels, which are "Internet and telephone based," differ significantly from the sales methods employed by TracFone, which sells products through major retailers including Walmart, Target, Walgreens and CVS [D.E. 82 at 16]. "Despite some overlap in Internet usage," Clear Choice argues, the parties' trade channels are fundamentally different. *Id.* at 17.

third parties.

The Court is not persuaded by Clear Choice's argument. While TracFone does make sales through large retailers such as Walmart, it also offers and sells products on the Internet using the domain names NET10.COM, NET10WIRELESS.COM and SIMPLEMOBILE.COM [D.E. 12–8 ¶ 6]. Clear Choice is an online retailer using the domain names NET10GSM.COM and MYSIMPLEMOBILEREUP.COM, among others [D.E. 13–1]. The Court finds that TracFone has shown a sufficient overlap in trade channels used by the Parties, and this factor favors a finding of a likelihood of confusion. *See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F.Supp.2d 1339, 1352 (S.D.Fla.2001) (finding that a party's "complete incorporation" of a trademark holder's mark in an Internet domain name is likely to cause confusion among online consumers).

### e. Similarity of the Parties' Advertising Media

■ In examining the similarity of the parties' advertising, the relevant inquiry is whether there is likely to be a significant overlap in the audience of the media in which the parties advertise, such that a possibility of confusion could result. *See Frehling*, 192 F.3d at 1340 (citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1166 (11th Cir.1982)).

TracFone does not address this factor in its renewed motion for preliminary injunction, but in its original motion it asserted that "[b]oth parties primarily use Internet advertising, and, apparently, both rely on people conducting keyword searches for TracFone marks to drive people to their websites" [D.E. 12 at 12]. Nothing in the record indicates the type or frequency of the Internet advertising employed by Clear Choice or TracFone, and therefore the Court cannot draw any conclusions about the potential overlap in the audiences for the parties' respective ads. Based on this record, this factor does not support a finding of a likelihood of confusion.

### f. Clear Choice's Intent

■ In determining whether consumer confusion is likely, the Court must also examine the defendant's intent, to determine whether the defendant "had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent." *Custom Manufacturing*, 508 F.3d at 648 (internal citations and quotations omitted). TracFone argues that Clear Choice's registration of domain names using TracFone's marks is in itself evidence of an intent to deceive the public and capitalize on TracFone's reputation [D.E. 12 at 13]. Clear Choice argues that its sales of authentic TracFone goods and its use of a disclaimer on its websites shows that it was not acting with improper intent [D.E. 82 at 17].

Clear Choice asserts that it was granted a license to use TracFone's marks as part of an "agreement" executed with TracFone's Master Wholesaler, Cellucom [D.E. 13–1]. But this license did not come with any specific parameters: Clear Choice's Director of Operations, Amy Suleiman, testified that she received no explicit instructions from Cellucom on how the TracFone marks could or could not be used [D.E. 68–6 at 9–12].

In oral argument, Clear Choice's counsel represented that this license was conveyed in an email exchange with Cellucom in "late September 2012."[8] However, the

8. TracFone has asserted that Cellucom Issued a Simple Mobile "dealer code" to Clear Choice in an email dated September 25, 2012 [D.E. 26 at 4]. While Clear Choice's principal, Amy Suleiman, has disputed TracFone's characterization of this email exchange as the entirety of her company's agreement with

record shows that Clear Choice registered the domain names NET10GSM.COM and MYSIMPLEMOBILEREUP.COM on September 12, 2012—before any alleged license had been granted by Cellucom [D.E. 30–2]. Moreover, Clear Choice registered the domain names through a company called Domains By Proxy, LLC, which concealed Clear Choice's identity as the actual registrant.[9]

The Court finds that there is sufficient evidence in the record to support a finding that Clear Choice has used TracFone's marks in its domain names with the improper intent to capitalize on TracFone's business reputation. Without any explicit authorization from TracFone, Clear Choice adopted its marks and used them in domain names using the ".com" construction that is likely to lead a reasonable consumer to believe that the websites were controlled or otherwise affiliated with TracFone. Though Clear Choice argues that it had an implied license to use the marks in this way, the record shows that Clear Choice registered the allegedly infringing domain names *before* the purported implied license had been granted to Clear Choice. And the Court notes that Clear Choice registered the domain names through Domain By Proxy, thereby concealing its identity as the registrant. These facts suggest that Clear Choice acted with improper intent. This factor therefore favors a finding of a likelihood of confusion.

### g. Actual Confusion

█ Evidence of actual confusion is the best evidence of the likelihood of confusion, and "the quantum of evidence needed to show actual confusion is relatively small." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir.2010) (internal quotation omitted); *see also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir.1983). But evidence of actual confusion is not necessary to a finding of a likelihood of confusion. *Caliber Automotive*, 605 F.3d at 937; *Amstar*, 615 F.2d at 263. TracFone has not produced any evidence of actual confusion among consumers. Therefore this factor does not favor a finding of a likelihood of confusion.

Weighing all of the *Frehling* factors, the Court finds that TracFone has established that Clear Choice's use of its marks in domain names creates a likelihood of confusion among consumers. The NET10, Simple Mobile and REUP marks are strong marks that merit protection, and Clear Choice's use of these marks in its domain names is likely to cause confusion among consumers about what, if any, relationship or affiliation exists between TracFone and Clear Choice, and lead consumers to believe that it is purchasing goods or services directly from TracFone. And the evidence suggests that Clear Choice pursued this course of action with the intent to capitalize on TracFone's business reputation.

For these reasons, the Court finds that TracFone has established a likelihood of success on the merits of its trademark infringement claim.

### B. Irreparable Injury

█ The basis of injunctive relief is irreparable harm and inadequacy of legal

Cellucom [D.E. 27–1], she has testified that she was granted access to TracFone logos and other marketing materials in an email from Cellucom providing her with a password to a "dealer portal" [D.E. 68–6 at 7–9].

9. TracFone first contacted Domains By Proxy to complain about the alleged infringement of the domain names on or about June 7, 2013. Domains By Proxy then notified Suleiman and instructed her to contact TracFone by no later than June 12, 2013 [D.E. 87–1 at 10–11]. Suleiman was further warned that "[f]ailure to comply may result in the disclosure of your contact information to the complainant." *Id.*

remedies. *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990). The injury must be "neither remote nor speculative, but actual and imminent." And to qualify as "irreparable," the injury "cannot be undone through monetary remedies." *Id.*

While the Eleventh Circuit has previously recognized a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, this presumption has been called into question by the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). *See North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008). However, "a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir.1998) (citing *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985)). For the reasons stated above, the Court finds that TracFone has made a sufficiently strong showing of a likely of confusion created by the alleged infringement, and that threat of irreparable harm from Clear Choice's use of the TracFone marks in its domain names cannot be undone by monetary remedies. This factor favors the granting of an injunction.

## C. The Balance of Hardships

In analyzing this factor, courts examine the hardships suffered by the plaintiff—including loss of goodwill and reputation due to the infringement, and the expense associated with prosecuting the action—weighed against the hardships that a defendant will suffer if enjoined. Even so, a defendant who had no right to use a mark could suffer no legitimate hardship by being enjoined from using it. *See It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F.Supp.2d 1325, 1333 (S.D.Fla. 2013).

TracFone has alleged that its reputation and goodwill have suffered because of Clear Choice's use of the marks, and they have expended money pursuing this action [D.E. 74 at 17–18]. Clear Choice argues that there has been no hardship at all, and that TracFone has, in fact, benefited from Clear Choice's use of the marks [D.E. 82 at 19–20]. And Clear Choice argues that it "would effectively be forced out of business" by an injunction. *Id.* at 19.

The Court finds that the balance of hardships favors the entry of an injunction. TracFone has expended money to prosecute this action and has suffered damage to its goodwill and reputation from Clear Choice's use of the marks in the domain names. This qualifies as substantial harm for purposes of a preliminary injunction. *See It's A 10*, 932 F.Supp.2d at 1333. Any hardship from an injunction preventing Clear Choice's use of the marks in its domain names is simply the natural consequence of Clear Choice's unjustified use of the mark and is not sufficient to prevent the Court from granting the injunction.[10] *Id.*

---

10. In an affidavit cited by Defendants, Suleiman asserts that "[i]f this Court were to grant Plaintiff's request for a preliminary injunction and grant all of the remedies requested by TracFone ... Clear Choice would be forced to lay off all fourteen (14) of its employees and company revenue would drop to zero over- night" [D.E. 16–1]. However, as discussed above, TracFone now seeks to enjoin only Clear Choice's use of the marks in domain names. Clear Choice has not presented any specific evidence of hardship that may result from an injunction applying only to the domain names.

### D. The Public Interest

Finally, the Court must determine whether entering the injunction would be adverse to the public interest. "The public interest relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." *Angel Flight of Georgia, Inc. v. Angel Flight Am.*, 522 F.3d 1200, 1209 (11th Cir.2008). As discussed above, Clear Choice's use of the TracFone marks in its domain names is likely to cause consumer confusion as to the source of the websites and the services offered on them. An injunction preventing Clear Choice from using the domain names clearly serves the public interest in avoiding unnecessary confusion.

### IV. Conclusion

The Court finds that TracFone has adequately established the four elements necessary to preliminarily enjoin Clear Choice's use of the marks "NET10," "Simple Mobile" and "REUP" in any domain names of Clear Choice's websites. Accordingly, it is ORDERED AND ADJUDGED that Plaintiff TracFone's Motion for Preliminary Injunction [D.E. 74] is GRANTED.

Accordingly, it is FURTHER ORDERED that Defendants, their principals, officers, directors agents, servants, and employees, as well as any successors and/or assigns of Defendants and all those acting in privity, concert or participation with Defendants, be and are hereby enjoined and restrained, pending final disposition of this action at trial on the merits, from:

1. operating any website associated with, using, linking to, transferring, selling, exercising control over, or otherwise owning any domain name that incorporates, in whole or in part, the "NET10," "Simple Mobile" and "REUP" Marks or any marks confusingly similar thereto or colorable imitation thereof;

2. engaging in any other activity constituting unfair competition or infringement of the Marks or Plaintiffs rights in, or to use, or to exploit the same; or

3. assisting, aiding or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (1) and (2) above; and it is hereby

FURTHER ORDERED that Plaintiff TracFone Wireless, Inc., shall post an injunction bond with the Clerk of Court in the amount of $7,500.00 within ten (10) days of the date of this Order.